STATE OF MISSOURI, at the Relation of MARY ELLEN BOSTELMANN, Relator, v. HONORABLE ROBERT L. ARONSON, Judge of the Circuit Court of the City of St. Louis, Missouri, formerly presiding in Division No. 2 and now presiding in Division No. 18 thereof, and HONORABLE EDWARD M. RUDDY, Judge of the Circuit Court of the City of· St. Louis, Missouri, presiding in Division No. 2 thereof, Respondents, No. 41993—235 S. W. (2d) 384.

Court en Banc, December 11, 1950.

Rehearing Denied, January 8, 1951.

*Hyman G. Stein* for relator.

*Lewis, Rice, Tucker, Allen & Chubb, R. Walston Chubb* and *Lyle M. Allen, Jr.,* for respondents.

538

[385] DALTON, J.—This is an original proceeding in prohibition to prevent respondent Honorable Robert L. Aronson, a circuit judge of the city of St. Louis, and his successor, Honorable Edward M. Ruddy, now presiding in Division 2 of the circuit court of the city of St. Louis, from enforcing, or requiring relator Mary Ellen Bostelmann to comply with an order entered in a certain cause pending in said division of said circuit court, wherein Schwarzschild Brothers, Inc., a corporation, is plaintiff and Henry William Bostelmann, Mary Ellen Bostelmann, his wife, and Manchester Bank of St. Louis, a corporation, are defendants. The order required relator to open her safe deposit box in the Manchester Bank of St. Louis and to permit plaintiff, Schwarzschild Brothers, Inc., to make an examination and inspection of the contents of the box and to photograph any item or article, other than currency, contained therein. Respondents' return to our provisional rule admits the making of the order in question and that, unless prohibited by this court from so doing, the order will be enforced and relator will be required to comply therewith.

Since one of the issues presented is whether the contents, if any, of relator's said safe deposit box were shown to be relevant and material to the issues in the cause in which the order was entered, we must look to the allegations of the petition on file at the time the order was entered.

In count 1 of the second amended petition on file, in said cause, it was charged that on or about February 14, 1949, defendant Henry

William Bostelmann had wrongfully appropriated and converted to his own use a large stock or collection of jewels and jewelry belonging to the plaintiff and located in Richmond, Virginia, of a reasonable value in excess of $221,995.00, and that he had thereby become indebted to plaintiff in a sum in excess of the amount mentioned. Judgment was prayed against said defendant for said sum and costs. Count 2 charged, on information and belief, that subsequent to February 14, 1949, defendant Henry William Bostelmann transferred to his said wife (relator herein) currency and other property of a character unknown to plaintiff, with the intent to hinder, delay and defraud plaintiff in the satisfaction of its just and lawful claim against Henry William Bostelmann; that some or all of the property ·(except that mentioned in count 3) had been deposited in a joint account of said husband and wife with defendant Manchester Bank of St. Louis and some or all of the property so transferred had been placed by said husband or his wife in a safe deposit box standing in the name of Mary Ellen Bostelmann at the Manchester Bank. Plaintiff prayed for judgment setting aside the alleged transfers and for an injunctive order [386] against the use by relator of her safety deposit box and for a temporary injunction restraining relator from having access to or taking any articles from said safe deposit box. In count 3 it was charged that in August, 1949, defendant Henry William Bostelmann with the intent to hinder, delay and defraud plaintiff in the collection of its lawful claim against him had purchased several tracts of described real estate and had taken title in the name of himself and wife as tenants by the entirety. On information and belief it was alleged that the entire consideration for these purchases was furnished by defendant Henry William Bostelmann; and that by subsequent transfers the title to this real estate was fraudulently placed in the name of Mary Ellen Bostelmann.

While said cause was pending, but prior to the filing of the second amended petition, Schwarzschild Brothers, Inc., filed an unverified motion entitled, "Motion for production, inspection and photographing," praying for the now questioned order of the circuit court requiring defendants Mary Ellen Bostelmann and Manchester Bank of St. Louis to permit the plaintiff to enter safe deposit box No. 2060 in the vault of defendant bank, standing in the name of Mary Ellen Bostelmann, "to permit the plaintiff to inspect and photograph all jewels and jewelry and contained in said safe deposit box and also all proceeds of any sale or exchange of any jewels and jewelry" and all property other than currency "contained in said safe deposit box." It was further alleged that Mary Ellen Bostelmann and Manchester Bank had possession, custody or control of the said safe deposit box; and that "the above mentioned

jewels and jewelry, the proceeds of any sale or exchange of any jewels and jewelry and all currency and other property conveyed, transferred or assigned by defendant Henry William Bostelmann to defendant Mary Ellen Bostelmann since the 14th day of February, 1949, constitute evidence relevant and material to the matters involved in this action.'' It will be noticed that the application contained no direct allegation that the safe deposit box in fact contained anything, or what it contained.

Thereafter, and after the filing of the second amended petition, a hearing was had on the said application for the mentioned order. At this hearing there was evidence that, at all times since October 21, 1943, relator had rented safe deposit box No. 2060, at the Manchester Bank of St. Louis; and that on the said date she had signed a rental agreement with the bank and had further named her husband as deputy for her with full authority to have access to. said safe , deposit box. This appointment as deputy was not cancelled until November 29, 1949, a date prior to the filing on December 19, 1949, of the motion in question for the inspection of the box. There was evidence that Henry William Bostelmann had visited the box and signed access tickets 12 times during a period beginning on February 24, 1949 and ending October 24, 1949 (5 times within the first 30 days) and that Mrs. Bostelmann had visited the box 6 times between February 24 and October 24, 1949. The bank records showed that the length of these visits varied from 2 to 41 minutes, but respondents concede that these records ''were some times inaccurate.''

Thereafter, plaintiff offered evidence from the land records of the city of St. Louis as to the purchase in the name of Henry William Bostelmann and his wife, relator herein, of three tracts of real estate after February 14, 1949 and prior to the institution of this action, and the subsequent transfer, after the institution of the pending action, of title to five properties, including the transfer of title to two tracts to Mary Ellen Bostelmann alone, and the encumbering of the other tracts by the transferees.

Other evidence to which respondents refer as supporting their motion, includes testimony to the effect that plaintiffs were unable to locate and subpoena Mary Ellen Bostelmann as a witness; that her attorney had refused to produce her so that plaintiff's attorney could take her deposition; that an attorney associated with her husband's attorney had witnessed and served on the said bank. the revocation of her husband's authority of access to the box in question; that the revocation of her husband's right [387] of access to the box was made after the filing of a prior motion for inspection of relator's safe deposit box and prior to the time relator was a party to the suit; that relator and her husband had so far failed

to plead to the second amended petition; and that all appearances on relator's behalf both in the principal case and in the garnishment proceedings in aid thereof had been by counsel.

It is admitted that, at a hearing on the first motion for inspection and prior to the time that relator was made a defendant in the suit, her counsel stated "that relator would agree to open the safe deposit box in the presence of the plaintiff's counsel to demonstrate to them that it did not contain any stolen jewelry upon the condition that the plaintiff would immediately cause the writ of garnishment under which the box was being held to be dissolved, thus allowing relator and her husband free access to the box and all of its contents. This offer was conditioned upon dissolution of the writ of garnishment and limited to inspection for stolen jewelry only, without the right to inspect the box for proceeds of sale of jewelry belonging to the plaintiff or other evidence of conversion, and was rejected by the plaintiff's counsel." The first motion for inspection was denied on the ground that relator was not a party to the action and that her husband's right of access to the box had been revoked.

After the final hearing on the second and final motion for inspection, the respondent, Honorable Robert L. Aronson, who heard the evidence on the motion, filed a memorandum opinion in the cause on February 24, 1950, wherein he reviewed the allegations of the second amended petition and then stated: "Evidence was presented at the hearing on the motions to the effect that Mr. Bostelmann made many trips to the safe deposit box during the period which is of interest here (specifically 12 visits to the box, while his wife was making but 6) and that some of his visits were of long duration. Many suspicious circumstances were revealed in evidence, both in connection with the revocation of his right to enter the box and with respect to transfers of real estate, in addition to other matters. * * * There is considerable controversy as to the * * * motion for production, inspection and photographing which is directed both to defendant Mary Ellen Bostelmann and to defendant Manchester Bank and which relates to the safe deposit box, which the evidence showed to be box No. 2060. * * * In effect Mrs. Bostelmann is alleged to be the fraudulent transferee of personal property from her husband in count 2 of the petition, and the bank is joined in the suit to set aside the transfers as her bailee of the allegedly fraudulently transferred property. Plaintiff now seeks to inspect and to photograph the contents of the safe deposit box. The place to be examined can be described and designated specifically as box 2060, but the contents thereof are unknown to plaintiff and cannot be specifically described in any motion of plaintiff nor in any order by the Court."

Respondent Aronson thereupon entered the order in question, which is in part as follows: "It is hereby ordered that defendants Mary Ellen Bostelmann and Manchester Bank of St. Louis be and are hereby ordered, at 10 a.m. on the 6th day of March, 1950, to open that certain safe deposit box on the premises of Manchester Bank of St. Louis numbered 2060, standing in the name of defendant Mary Ellen Bostelmann, * * * to permit plaintiff's attorneys and representatives to make a full and complete inspection and examination of the contents of said box, including all articles of jewels and jewelry therein contained; and the said Manchester Bank of St. Louis and Mary Ellen Bostelmann are further ordered, upon request of the said plaintiff's attorneys, to permit any item or article, including jewels and jewelry, other than currency, found in said box to be then and there photographed by a photographer designated by plaintiff's attorneys, at said plaintiff's expense, so long as said Manchester Bank retains custody and control of said items."

Relator contends that prohibition is the proper remedy to prevent the enforcement of the order for inspection as made by the respondent judge; that the order fails to comply with the requirements of Sec. 86 [388] of the Civil Code, Laws 1943, p. 379, Mo. R. S. A. Sec. 847.86; that the order is in excess of and beyond the jurisdiction of the court; that the order is for the search of relator's property and effects "not designated" in a valid order and not found to be material to any matter involved in the pending action; that no relevant documents, papers, property or objects are designated or described in said order; that the order is a mere "fishing expedition," since respondent's memorandum concedes that the contents of the box "are unknown to plaintiff and cannot be specifically described in any motion of plaintiff nor in any order by the court"; that no relevant material evidence was shown to be in existence or to have been in the box; and that the order, being one for the unlimited and unrestrained search and examination of relator's safe deposit box and for the inspection and examination of any and everything contained therein, is void and respondent and his successor judge are without jurisdiction to enforce it.

Respondents on the other hand contend that the order was properly made "after good cause therefor had been shown, as required by Sec. 86"; that respondent Aronson "acted within the jurisdiction and discretion conferred upon him by said Sec. 86"; that the order complies with the requirements of Sec. 86, supra; that a party seeking inspection need only establish a reasonable basis for the belief that the property and objects to be inspected constitute or contain evidence material to the matters involved; that the evidence in support of the motion established a strong basis for the belief that the property and objects to be inspected constitute and contain

material evidence to plaintiff's cause of action; that Sec. 86, supra, does not "require a showing that specific property is actually in existence," or an "exact specification of the documents or objects sought to be inspected"; and that "the entire purpose of the plaintiff's motion for inspection in the case at bar was to obtain evidence to aid in the prosecution of its action."

Respondents concede that the order for inspection was purportedly made and entered pursuant to Sec. 86, supra, which provides that "Upon motion of any party *showing good cause therefor* and upon notice to all other parties, the court in which an action is pending *may* (1) *order* any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of *any designated documents,* papers, books, accounts, letters, photographs, objects, or tangible things, *not privileged, which constitute or contain evidence material to any matter involved in the action* and which are in his possession, custody, or control; or (2) order any party to permit entry upon *designated land or other property* in his possession or control for the purpose of inspecting, measuring, surveying, sampling, or photographing the property or *any designated relevant object* or operation thereon. * * *" (Italics ours).

It is apparent from the briefs that respondents concede that they are without jurisdiction to require relator to permit the inspection of documents, papers, objects, or tangible property or the copying and photographing thereof, unless such items constitute or contain evidence relevant and material to the issues involved in the pending action. State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S. W. (2d) 645, 647; State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S. W. (2d) 383; State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171 S. W. (2d) 569; State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S. W. (2d) 907.

Respondents insist that "relator has not sustained the burden of proof which is upon her in this court to show that the objects to be inspected do not constitute or contain material evidence." State ex rel. Clemens v. Witthaus, 360 Mo. 274, 228 S. W. (2d) 4, 7; State ex rel. Cummings v. Witthaus, supra. Respondents, however, have brought before this court the entire record upon which the questioned order was entered and from a review of that record we can determine the issues presented. In considering the issue of relevancy and materiality we may look to the pleadings, the application for the order, the evidence in support thereof and the order as entered, but the issue of relevancy [389] ultimately must be determined on the basis of the matters designated in the order itself and that question requires an examination of the matters designated for inspection in the questioned order. Respondents say "the motion and order

are sufficient in their designation of the property and objects to be inspected.''

The order designates safe deposit box No. 2060 and its contents. There is no contention that this safe deposit box in itself constitutes relevant and material evidence on the issues of the pending action, but the order requires relator to permit plaintiff's attorneys and representatives to make a full and complete inspection and examination of the contents of said box. The order covers the entire contents of relator's safe deposit box, whatever it may contain, little or much, but nothing therein is designated in any manner so that its relevancy and materiality can be determined, nor can it be determined whether the matters to be inspected are privileged. The order itself not only designates no documents, papers, books, accounts, photographs, objects, tangible things, or other property, but made no determination of the issues of relevancy and materiality or of privilege. The order as entered covers everything and anything that might be found in the box, regardless of relevancy, materiality or privilege.

Section 86, supra, clearly requires a designation of the matters and things to be subjected to production or inspection; that these matters, objects or property constitute or contain evidence material to the issues in the pending cause; and that the matters and things ordered produced or subjected to inspection are not privileged. State ex rel. Cummings v. Witthaus, supra.

The questioned order in this case contained no proper or sufficient designation of the matters and things to be subjected to inspection. The order was too broad and all inclusive and there was no showing and no finding that the matters and things to be inspected were material to the issues of the pending cause. It was beyond the jurisdiction of respondent Aronson to order relator to permit the inspection of the contents of her safe deposit box absent a designation of the matters and things therein to be inspected and a showing of relevancy and materiality of these matters and things.

In the case of State ex rel. Cummings v. Witthaus, supra, the questioned order covered ''all written agreements entered into between Standard Generator Service Warehouse, Inc., and Charles Henry Cummings from the date of the employment by said corporation of Charles Henry Cummings to the termination of such employment.'' The court said: ''But as to paragraph 7 of the court's order, it contains no proper or sufficient designation of the written agreements as is required by Section 86. It is too broad and all inclusive. It includes 'all written agreements'. It is not even limited to such written agreements as are material to the issue of employee or independent contractor. Mo. R. S. A. § 847.86; 1 Carr's Missouri Civil Procedure, p. 734; State ex rel. Thompson v. Harris, supra; Haffenberg v. Wendling, 271 App. Div. 1057, 69 N. Y. S. 2d 546; 27 C. J. S.,

Discovery, § 80, p. 120; Sonken-Galamba Corporation v. Atchison, T. & S. F. Ry. Co. et al., D. C., 30 F. Supp. 936, 937. In the last-cited case, the court said: 'We consider that it was never intended * * * that this rule (Federal Rules of Civil Procedure, rule 34, 28 U. S. C. A.) should be used as a dragnet on any fishing expedition. Properly interpreted it cannot be so used. * * * It (the motion and order) must designate the document sought * * *. The documents sought in these motions are described in such general omnibus language that they are not "designated" at all. * * * They call for "all" documents, satisfying a certain general description, coming to the defendants during periods of years.' Neither plaintiff nor her counsel have any right to inspect any written agreement between relators which is not material to the instant issue. Any such document is privileged. To permit that would invade relators' right of privacy and contravene their fundamental rights." 219 S. W .(2d) 383, 390.

■ Respondents, however, contend that the "evidence adduced by the plaintiff in support [390] of its motion for inspection clearly established the 'good cause' necessary under Sec. 86 * * * for the order for inspection." Respondents point to the evidence we have reviewed above, particularly with reference to the visits of relator and her husband to box No. 2060 and insist that this evidence was sufficient "to show good cause for the inspection of the box to obtain evidence with respect to the conversion alleged in count 1," and "to obtain evidence of the fraudulent conveyances alleged in counts 2 and 3." Respondents insist that, if the box contains objects converted, or the proceeds of same, or unrecorded deeds, or the record of personal property transferred by Henry William Bostelmann to his wife, such "would be relevant and significant evidence"; and that "the action of both the relator and of Henry William Bostelmann gives rise to an inference of guilty knowledge of the contents of the box and an attempt to conceal." Respondents further say that "the inferences to be drawn from the facts developed in this case clearly connect the safe deposit box * * * and its contents with the cause of action for conversion"; and that the evidence "amply justified the inference that the safe deposit box contains evidence of conversion and evidence of fraudulent conveyance of personalty or of muniments of title."

We think the evidence offered in support of the motion was wholly insufficient either to show "good cause" for the issuance of the order, or to establish a reasonable basis for a belief that the box contained documents, objects or tangible property relevant and material to the issues of the pending suit. There was no evidence that Henry William Bostelmann or anyone else ever placed any of the property mentioned in plaintiff's petition, or any proceeds thereof, or any other

object, document, property or paper connected therewith in said safe deposit box at any time. No evidence was offered from which an inference could be drawn as to the contents of the said safe deposit box, or that it contained any specific thing, property or evidence whatsoever. At said hearing plaintiff's counsel stated to the court that he had no knowledge with respect to the exact contents of the safe deposit box and, therefore, could not designate which of the contents thereof plaintiff desired to inspect and photograph. The respondent Aronson's memorandum opinion concedes that the contents of the box "are unknown to plaintiff and cannot be specifically described in any motion of plaintiff nor in any order by the court." The fact that Henry William Bostelmann visited the box on some 12 occasions is as consistent with his taking something out of the box as with his putting something in. The length of his stay at the box might sustain an inference as to an inspection or examination of something, but there is no evidence as to what the box then or now contains. The sole fact that one against whom a suit has been filed may have visited a safe deposit box subsequent to a date mentioned in the petition without any evidence of what personal property he owned or had in his possession is no evidence that the box contains relevant material evidence. The evidence offered was wholly insufficient to sustain an inference that the box contained any relevant and material evidence on the issues of the pending case.

On the issue of fraudulent conveyances, respondents point to the acquisition of real estate by relator and her husband subsequent to a date mentioned in the petition and the conveyance of this and other property after the suit was instituted. Respondents contend that "a conveyance without consideration from husband to wife is prima facie fraudulent *as to existing creditors* and the burden is upon the grantee to prove absence of fraud"; that "the presumption of fraud arising from a conveyance to a wife by a husband *while in debt* applies equally to the case of a conveyance to an estate by the entirety by a husband while in debt"; that "transfer of property in anticipation of *enforcement of creditors' claims* is itself a recognized badge of fraud"; that "secrecy and concealment are recognized badges of fraud"; that "it is well settled that conveyance of property subsequent to *an event giving rise to possible* [391] *liability* justifies an inference of guilt"; and that "conveyance of property under such circumstances therefore should surely constitute 'good cause' for discovery." (All italics ours).

We are not here concerned with the merits of the cause of action stated against the defendants or with plaintiff's theory of proof. The question here concerns "good cause" for the order of inspection and whether the plaintiff in support of its application for the order has designated the matters it seeks to inspect and has shown the material-

ity of such evidence. No evidence as to any "event giving rise to possible liability" or as to any debtor and creditor relationship was offered in support of the appliccation for the questioned order and, if offered, it would not have supported the making of the order. The mere fact of the institution of the law suit could not be "good cause" for an unlimited inspection and search of the unknown contents of relator's safe deposit box. There was no substantial evidence from which an inference could be drawn that any documents or papers relating to the alleged fraudulent transfers were located in said safe deposit box. The evidence upon which the order for inspection was based amounts to no more than mere guess, suspicion and conjecture that the box might or could contain relevant and material evidence. The order was in excess of the jurisdiction of the respondent judge who entered the order. The entering of the order represented a clear abuse of judicial discretion. As stated in the opinion of this court in State ex rel. Cummings v. Witthaus, supra, "Under the guise of discretion the trial judge cannot authorize a mere 'fishing expedition.' "

In view of our conclusions with reference to the order as entered and as to the evidence upon which it was based it will be unnecessary to consider respondents' contention that "the order for inspection is in keeping with the traditional discovery powers of courts of equity and does not violate due process of law or any privilege of the relator against unreasonable search and seizure or any other of the relator's fundamental rights under the Federal or State Constitutions."

Our provisional rule should be made absolute. It is so ordered. All concur.